

FILED
U.S. DISTRICT COURT
DISTRICT ~~~~

2016 APR 22 PM 2: 15

CLERK'S OFFICE
AT BALTIMORE

BY_____   _____DEPUTY

**U.S. Department of Justice**

United States Attorney
District of Maryland
Northern Division



ARH
3/16/16

Rod J. Rosenstein
United States Attorney

Peter J. Martinez
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland
21201

DIRECT: 410-209-4984
MAIN: 410-209-4800
FAX: 410-962-3124
TTY/TDD: 410-962-4462
Peter.Martinez@usdoj.gov

March 16, 2016

Christopher Purpura, Esq.
Law Office of Purpura & Purpura
8 E. Mulberry Street
Baltimore, MD 21202

Re:   *United States v. Ryan Dark White*, Crim. No. JKB-15-545
                                                  JKB-16-0172

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 21, 2016, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

1.    The Defendant agrees to plead guilty to Count Two of the indictment now pending against him, in which he is charged with possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). The Defendant also agrees to waive indictment and plead guilty to a supplemental information charging him with health care fraud, in violation of 18 U.S.C. § 1347. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Possession of Ammunition by a Prohibited Person

a. That on or about October 5, 2015, in the District of Maryland, the Defendant knowingly possessed ammunition, as that term is defined in 18 U.S.C. § 921(a)(17);

b. That prior to October 5, 2015, the Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year and his civil rights had not been restored; and

c. That the ammunition affected interstate commerce because it was manufactured outside the state of Maryland.

Health Care Fraud

a. That the Defendant knowingly executed a scheme to defraud a health care benefit program by means of false or fraudulent pretenses, representations, or promises;

b. That the false or fraudulent pretenses, representations, or promises related to a material fact;

c. That the defendant acted willfully and intended to defraud; and

d. That the Defendant did so in connection with the delivery of or payment for health care benefits, items, or services.

**Penalties**

3. The maximum penalties provided by statute for **both** of the offenses to which the Defendant is pleading guilty are as follows: 10 years imprisonment, a $250,000 fine, and a three-year term of supervised release.

4. In addition, the Defendant must pay $100 as a special assessment for each count of conviction, pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.

5. This Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

6. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Forfeiture

7. The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm or ammunition. The Defendant forfeits all right, title, and interest in the following firearms and ammunition:

   a. Eight Lli Pietta .44 caliber black powder guns (converted to .45 caliber)

   b. One Flare Gun (converted to .410 caliber)

   c. One Derringer .22 caliber Magnum firearm, bearing serial number 2447144

   d. One unknown firearm bearing serial number R417259

   e. 620 rounds of Magtech Colt .45 caliber ammunition

   f. 50 rounds of Gamepoint .22 caliber ammunition

   g. Four rounds of Winchester .410 gauge rifled slug hollow point ammunition

### Waiver of Rights

8. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified; they would also have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court would instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions, except as set forth in Paragraph 20 of this agreement.

f.  By pleading guilty, the Defendant will be giving up all of these rights. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of this case. Any statements that the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statements.

g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

9.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

10. This Office and the Defendant understand, agree and stipulate to the following statement of facts, which this Office would prove beyond a reasonable doubt:

> On October 5, 2015, agents of the Drug Enforcement Administration lawfully executed a search warrant at the Defendant's residence, which was located at 5211 Daybrook Circle, Apartment No. 431, in Rosedale, Maryland. While searching the Defendant's residence, the agents recovered 420 rounds of Magtech .45 Colt ammunition, as well as four rounds of Winchester .410 gauge rifled slug hollow point ammunition.
>
> The Defendant admits that prior to October 5, 2015, he had been convicted of a crime punishable by imprisonment for a term exceeding one year and his civil rights had not been restored. The Defendant further admits that the ammunition recovered from his apartment was "ammunition," as defined in 18 U.S.C. § 921(a)(17); and that the ammunition was manufactured outside the state of Maryland and therefore affected interstate commerce.
>
> The Defendant also admits that between in or about September 2011 and in or about September 2015, he knowingly and unlawfully obtained prescriptions for oxycodone and hydrocodone from Dr. Paul Frank Ginnandrea in Lutherville, Maryland. The Defendant obtained these prescriptions by willfully misrepresenting his medical condition—including specifically, his ability to walk without the assistance of canes, which he claimed was a symptom of Amyotrophic Lateral Sclerosis (ALS)—for the sole purpose of inducing Dr. Ginnandrea to issue prescriptions for which the Defendant had no legitimate medical need. Had this matter proceeded to trial, Dr. Ginnandrea would have testified that, but for the Defendant's false representations regarding his medical condition, he (*i.e.*, Dr. Ginnandrea) would not have issued prescriptions to the Defendant for Scheulde II narcotics such as oxycodone and hydrocodone.
>
> Medicare records indicate that from September 2011 to February 2014, Dr. Ginnandrea typically prescribed the Defendant 1,800 oxycodone 30 mg pills per month, for a total of 59,310 dosage units. Similarly, from August 2014 to September 2015, Dr. Ginnandrea typically prescribed the Defendant 1,500 Zohydro 50 mg pills per month, for a total of 20,850 dosage units. The active ingredient in Zohydro is hydrocodone. Medicare records indicate that the program paid $142,911 for prescriptions issued by Dr. Ginnandrea to the Defendant between September 2011 and

September 2015. Medicare is a federally funded health care benefit program that provides services for the elderly and disabled.

11. This Office and the Defendant understand, agree and stipulate to the following applicable sentencing guidelines factors. First, with regard to Count Two (possession of ammunition by a prohibited person), the parties agree and stipulate that pursuant to U.S.S.G. § 2K2.1, the base offense level is 20 because the Defendant committed the instant offense after sustaining a conviction for a controlled substance offense. Second, with regard to the health care fraud count, the parties agree and stipulate that that pursuant to U.S.S.G. § 2B1.1(a), the base offense level is 6. The parties further agree that this base offense level should be increased by 8 levels (to 14) because the offense resulted in a loss of more than $95,000 but less than $150,000. Finally, the parties agree that the offenses of conviction do not "group," within the meaning of U.S.S.G. § 3D1.2; and that the combined offense level for the two offenses is 21, pursuant to U.S.S.G. § 3D1.4

12. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, pursuant to U.S.S.G. § 3E1.1(a). This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful to the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Therefore, this Office and the Defendant agree that the adjusted offense level for the counts of conviction is **18**.

## Obligations of the United States Attorney's Office

13. At the time of sentencing, this Office will recommend a reasonable sentence. This Office will also move to dismiss any open counts against the Defendant.

14. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The parties will be free to address any facts that inform the application of 18 U.S.C. § 3553.

15. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Restitution

16. The Defendant agrees to the entry of a Restitution Order for the full amount of the loss suffered by Medicare in connection with the Defendant's violation of 18 U.S.C. § 1347. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and

3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Collection of Financial Obligations

17. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

18. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

19. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years incarceration and a fine.

## Waiver of Appeal

20. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

   c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a),

or from appealing from any decision thereunder, should a sentence be imposed that results from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

21. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

22. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of his sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and that the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea; rather, he will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

23. This letter supersedes any prior understandings, promises, or negotiations between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Peter J. Martinez
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and I have carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-23-16
Date

Ryan Dark White

I am Mr. White's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3-23-16
Date

Christopher Purpura, Esq.